# Pennsylvania Railroad Company *versus* Spicker.

1. A round trip railroad excursion ticket, not limited by its terms, is good until used, unless the purchaser was personally notified to the contrary at the time he bought it. The purchaser is not bound to make inquiries about regulations of the company not printed on the ticket.

2. In an action by the holder of such a ticket against a railroad company to recover damages for refusing to accept the return coupons thereon when tendered for passage more than two years after it was sold, and for ejecting the plaintiff from a train on his refusal to pay fare, evidence is not admissible to show that by the regulations of the company such excursion tickets were not good for travel after a certain date, and that general public notice of such regulations was given in the ticket office where it was sold, and elsewhere, by posters, circulars and excursion books—it not being offered to show that direct notice of such regulation was given to the plaintiff at the time he purchased the ticket.

3. Where a ticket is sold by one railroad company for travel over its own and connecting lines, on the face of which ticket the responsibility of the selling company is expressly limited to its own line, and an action is afterwards brought against the selling company to recover damages for a refusal to accept the ticket from the plaintiff and ejecting him from a train, while travelling on the railroad of another company, and subject to its regulations, though in a car of the selling company in charge of a conductor in the uniform of that company, it is a question for the jury whether the conductor was at the time of the alleged injury in the employ and acting under the directions of the defendant company.

4. The measure of damages in an action against a railroad company for wrongfully putting the defendant off a train is not confined to compensation for loss of time, expenses incurred, and the cost of another ticket. It is for the jury to say what is a fair compensation for injuries suffered by the plaintiff arising from being ejected from the train.

5. The Supreme Court, on a writ of error, has no power to grant relief because it deems the damages found by the jury, under instructions such as stated in the preceding clause, exorbitant, under the testimony in the case. That is a matter in the discretion of the court below.

6. In an action against a railroad company to recover damages, the record of a former suit by the plaintiff against another railroad company for the same cause of action, is not admissible in evidence.

January 22, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July term, 1883, No. 152.

This was an action on the case, by Mark Spicker against the Pennsylvania Railroad Company, to recover damages for an alleged illegal expulsion from a railway train.

On the trial, before BIDDLE, J., the following facts

[Penna. R. R. Co. v. Spicker.]

appeared: In August, 1879, the plaintiff purchased at the office of the Pennsylvania Railroad Company, in Williamsport, Pa., a railroad excursion ticket, for one first class passage from Williamsport to Philadelphia and return, on which he travelled to Philadelphia. He did not use the return coupons of the ticket until more than two years afterwards, viz., on November 3, 1881, when he started to travel from Philadelphia to Williamsport. The ticket was accepted for passage on the Pennsylvania Railroad from Philadelphia to Harrisburg. After leaving Harrisburg, the conductor of the train declined to accept the ticket, and demanded fare. Plaintiff did not pay it, but was permitted to travel until after the train had stopped at Dauphin, and had started from that station. The conductor then again declined to honor the ticket and demanded fare, which the plaintiff refused to pay. The conductor then stopped the train, some distance from the Dauphin station, and the plaintiff was ordered to leave the train, which he did, no violence being used. The train was not stopped at a station, and the testimony was conflicting as to the distance from the Dauphin station at which it was stopped; the conductor testified it was about a quarter of a mile; the plaintiff said it was a mile and a quarter.

Plaintiff testified that when he went to buy a ticket, in 1879, he intended to buy a single trip ticket, but the agent said he could buy a round trip ticket which was good until used, and he did so; that he did not see or read any posters or other notice showing that the ticket was not an unlimited one; that the car he was ejected from was a Pennsylvania Railroad car, and the conductor and brakeman were in the uniform of that company; that at the time he was put off the train it was raining, and that the exposure in walking back to Dauphin station caused an illness from which he afterwards suffered in health and in his business, to the extent fully described by him.

The defendant proved that the railroad, at the point where the plaintiff was put off the train, was then embraced in the Susquehanna division of the Northern Central Railroad. The testimony on behalf of the defendant was that the conductor of the train, in refusing to accept the ticket, was acting solely under printed instructions issued to him by the officers of the Northern Central Railway Company, and that while running on that division he was subject to the orders of that company.

The following is a copy of the ticket and remaining coupons attached, which was offered and refused:—

[Penna. R. R. Co. *v.* Spicker.]

## PENNSYLVANIA RAILROAD COMPANY.

This excursion ticket entitles the bearer to one trip to Philadelphia, Pa., and return.   This ticket is void unless officially stamped and dated.   In selling this ticket for passage over other roads this company acts only as agent, and assumes no responsibility beyond its own line.   This company assumes no risk on baggage except for wearing apparel, and limits the responsibility to one hundred dollars in value; all baggage exceeding that value will be at the risk of the owner, unless taken by special contract. The checks belonging to this ticket will be void if detached.
Exc. P. & E. 1.
4499.                                    L. P. FARMER,
                                              General Passenger Agent.

## PENNSYLVANIA RAILROAD COMPANY.

*Phila. & Erie R. R. Div.*

|  |  |  |
|---|---|---|
| 37 | One first class passage | 195 |
| 60 | *Sunbury* to | . 223 |
| 149 | *Williamsport* | 248 |
|  | This check is not good if detached | 279 |
| 168 | *Philadelphia, Pa., and Return* | 288 |

Issued by

PENNSYLVANIA RAILROAD COMPANY,

On account of Northern Central Railroad

One first-class passage *Harrisburg to Sunbury.*

· This check is not good if detached.

*Philadelphia, Pa., and return.*

[Stamped on the back.]

PENNSYLVANIA RAILROAD COMPANY,

237,

Passenger Department,

Pennsylvania R. R. Co. Office.

Aug. 22, Williamsport.

Defendant offered to prove that prior to the sale of said ticket, in 1879, public notice was given at the place where the ticket was purchased, in Williamsport, at the railroad offices and elsewhere, by handbills, circulars and excursion books (produced), that such tickets, good for the round trip, are sold from June 1st to October 1st, good to return until November 1st of the same year.

Objected to; objection sustained; exception.

Defendant offered in evidence the record of a suit by the plaintiff against the Northern Central Railway Company,

[Penna. R. R. Co. *v.* Spicker.]

C. P., No. 2, December Term, 1882, No. 350, for the same cause of action as that for which the present suit was brought.

Objected to; objection sustained; exception. (Sixth assignment of error.)

The defendant presented the following points:

. 1. The evidence fails to show any liability, either at common law or under a contract, on the part of the defendant, to carry the plaintiff from Harrisburg to Williamsport, and hence the verdict should be for the defendant. Answer. Declined.

2. If the jury believe that the plaintiff, by the exercise of ordinary diligence and care in making inquiries, could have ascertained at or before the time he got the ticket, that under the regulations and rules of the company it was not good after November 1, 1879, and did not exercise such care and diligence, then the plaintiff is not entitled to recover, and the verdict should be for the defendant. Answer. Declined.

3. The evidence does not show any malice or violence on the part of the conductor and other employees in putting the plaintiff off the train. Hence the damages, if any, which the plaintiff is entitled to recover must be limited to compensation for loss of time during which he was detained at Dauphin, his expenses then and there incurred, and the cost of another ticket. Answer. Declined.

The Court charged the jury as follows:

"There is no denial that the plaintiff went to the Pennsylvania Railroad office and purchased this ticket, with the accompanying coupons, and there is no doubt that while travelling upon the route covered by this ticket he was ejected from the car in which he was travelling.

"Now the first question for you to consider is, had anybody a right to put him off the car in which he was at the time when the conductor asked him for his ticket. There is nothing whatever on this ticket that I can see that limits in any way the time within which it is to be used. There is nothing to show the purchaser of this ticket that it is not at his discretion to use it when he was disposed to do so, and the company cannot limit their responsibility after making a contract of that sort by any directions or instructions to their agents. [Therefore, when the conductor refused to receive this ticket, and turned him off the car, in my opinion he committed a gross outrage.] I do not think that it is fair to comment upon the conduct of Mr. Smith as being at all brutal or violent, or more disrespectful than was necessary. He put this man off against his will, but it was not accompanied by any actual violence. That, however, does not make the putting him off less or more justifiable. That is a simple

9 OUTERBRIDGE.—10.

incident which depended upon the characteristics of the man
who happened to be the conductor at the time. [Putting the
plaintiff off the train was without any right whatever.] This,
then, raises the second question, which is really the main
question in this case. That is, whose agent it was that put
him off this car.

"Now, with us, we all understand the custom of the pre-
sent day, where there are long roads connected over which
the traveller is taken by the sale of the ticket with coupons
attached in this way. Where an outrage is committed upon
the traveller by some of these connecting routes over which
the original seller of the ticket has no control, it would be
very hard justice, indeed, if you were to attempt to make
the railroad that sold this ticket responsible for the conduct
of the employees of the other railroads. Very often these
tickets of this character take not only over railroads, but over
steamboat routes, and, of course, it would be a great hardship,
because a company sold you a ticket which gave you a privi-
lege of a trip to Europe, that the company who sold you that
ticket, if the captain of the vessel at sea was to violate your
rights in any way, should be responsible; and the defence in
this case is, that these defendants were not the agents of the
Pennsylvania Railroad at the time, and that they are not re-
sponsible, therefore, for their acts. Now, the plaintiff says
that that was not true; that there was no doubt that it was a
Pennsylvania Railroad car; that they were in the full uniform
of the Pennsylvania Railroad; that the insignia attached to
their coats designated that they were in the Pennsylvania
Railroad service, and had all the outward indications of being
in the employ of that company; and, therefore, the plaintiff
contends that the Pennsylvania Railroad Company, through
their servants, are therefore responsible. The defendant on
the other side has shown to you the different charters of these
railways, and has argued to you that although there does
appear to be a very intimate connection between the em-
ployees of the two roads, that in point of fact they were not
the employees of their railroad, but of the Northern Central
Railroad. You have heard the comments of counsel on each
side, and this is a question for you. If you believe the offence
was committed by the officers of the Pennsylvania Railroad,
defendant would be responsible. If, on the other hand, you
believe it was done by those over whom the company then
had no control, that the conductor was the employee of
another and distinct organization, then they would not be
responsible.

" The next question which will come before you is the ques-
tion of damages. It is for you to say, if you think any dam-

ages are to be given in this case, what the extent and nature of those damages should be. You are not bound, as the defendant claims, simply to give the damages which would be limited by compensation during the loss of time that Dr. Spicker was detained at Dauphin, or his expenses there. [If you think he has been improperly turned out of this car and his health injured and his business injured, it is for you to say what is a fair compensation for those injuries.] In considering the matter of damages, it is scarcely necessary to say to you who have been serving with me here for nearly three weeks, that all these questions are to be considered by you dispassionately."

Verdict for the plaintiff for $5,000. A motion for a rule for a new trial was dismissed, and judgment was entered on the verdict. The defendant took this writ of error, assigning for error the exclusion of defendant's offers of evidence as above, the answers to defendant's points, and the portions of the charge above included within brackets.

*Wayne Mac Veagh,* for the plaintiff in error.—Our offer should have been admitted to prove public notice of the regulations under which the excursion tickets were sold. The plaintiff's contract was subject to those regulations, the ticket was not the whole contract, but merely the token which entitled the holder to passage on the train; Crosby *v.* Maine Cen. R. W. Co., 69 Me., 418; Rawson *v.* Pa. R. R. Co., 48 N. Y., 217; Burnham *v.* Grand Trunk R. R. Co., 63 Me., 298; Johnson *v.* Concord R. R. Co., 46 N. H., 213; Quimby *v.* Vanderbilt, 17 N. Y., 306; Denton *v.* G. N. R. R. Co., 5 El. & Bl., 860; Hurst *v.* G. W. R. R. Co. 19 Com. B., 310. The liability, if any existed, was that of the Northern Central Railway Company, and not that of the Pennsylvania Railroad Company. The contract for travel between Harrisburg and Sunbury was with the former company which owned the track and the franchise at the locus in quo. By the express language printed on the ticket the Pennsylvania Railroad Company in selling the through ticket acted as agent for other lines, and assumed no responsibility beyond its own line: Penna. R. R. Co. *v.* Schwarzenberger, 9 Wr., 208. The case is not different because the car in which plaintiff was, belonged to the Pennsylvania R. R. Co., and was in charge of a P. R. R. conductor, running under arrangements for through trains. It is well understood, and was amply proved in this case, that the conductor while on the line of the Northern Central road was governed exclusively by the directions of that company, and in refusing the plaintiff's ticket was acting under their instructions, and not under those of the Pa. R. R. Co., nor in

the line of his employment by the latter company. The court erred in declining our third point and in leaving the question of damages generally to the discretion of the jury. As is usual in suits against railroad corporations, where such latitude is allowed, the jury found exorbitant damages. The true measure of damages in this case is well stated in Quigley *v.* Central Pacific Co., 5 Sawyer, Cir. Ct., 107.

The plaintiff below was notified before arriving at Dauphin that his ticket was not good, and was permitted to ride free to that point, the conductor thus affording him the option to leave the train at that station, buy a ticket, pay his fare to the conductor, or be put off. The plaintiff below chose the last, and cannot visit on the company consequential and speculative damages arising from his own act.

*William W. Wiltbank* (*D. M. M. Collins* with him) for the defendant in error.

Mr. Justice STERRETT delivered the opinion of the court November 10, 1884.

It was incumbent on the plaintiff below to prove that he was entitled to a seat in the car on which he was travelling at the time he was forcibly removed therefrom; and, that the conductor, who was in charge of the train and by whom he was ejected from the car, was then an employee of the Pennsylvania Railroad Company, acting within the general scope of his authority as such conductor. If these facts were established to the satisfaction of the jury, and nothing was shown to justify the action of the conductor, it necessarily followed that a trespass was committed for which the company was liable in damages; and, under proper instructions by the court as to the measure of damages, it was the exclusive province of the jury to determine the amount thereof, subject of course to the power of the court to set aside the verdict in case the damages awarded were clearly excessive and the plaintiff below refused to remit such excess. In view of the testimony, the damages in this case appear to us to be exorbitant; but, we have no right to grant relief on that ground alone. The power to do so was exclusively in the court below, and its refusal to exercise the discretion with which it was invested is not the subject of review here.

For the purpose of showing his right to travel on the train from which he was ejected, the plaintiff below gave in evidence a ticket of which the following is a copy:

"Pennsylvania Railroad Company. This excursion ticket entitles the bearer to one trip to Philadelphia, Pa., and return. This ticket is void unless officially stamped and dated. In

selling this ticket over other roads this company acts only as an agent, and assumes no responsibility beyond its own line. . . . . . The checks belonging to this ticket will be void if detached."

Attached to the ticket is a check as follows, viz.: " Pennsylvania Railroad Company. Phila. & Erie R. R. Div. One first-class passage, Sunbury to Williamsport. This check is not good if detached. Philadelphia, Pa., and return." Also another check which reads as follows : " Issued by Pennsylvania Railroad Company, on account of Northern Central Railroad. One first-class passage, Harrisburg to Sunbury. This check is not good if detached. Philadelphia, Pa., and return." Stamped on the back of the ticket is the following, viz.: " Pennsylvania Railroad Company, 237, Passenger Department, Pennsylvania R. R. Office, Aug. 22, Williamsport."

The ticket, of which the foregoing is substantially a copy, was purchased by plaintiff below in 1879, on the day it bears date, at the company's office in Williamsport, and immediately used by him in travelling thence to Philadelphia. The going checks were used in making that trip. Having the ticket with return checks still attached thereto in his possession, he left Philadelphia in November, 1881, intending to use the same in going thence to Williamsport. He experienced no difficulty until he reached a point on the Northern Central Railroad east of Dauphin, where he offered the ticket for passage to Sunbury and thence to Williamsport, but the conductor refused to receive it, on the ground that the time within which it might have been used had expired, and insisted on payment of the usual fare. That demand not having been complied with, the train, after making its usual stop at Dauphin, was again stopped some distance north of the station and plaintiff below was ejected therefrom for non-payment of fare.

There is nothing on the face of the ticket to indicate that it was limited as to time, nor was there any competent evidence, *dehors* the ticket, to prove any such limitation and notice thereof to plaintiff below. The offer to prove that prior to the sale of the ticket in 1879, public notice was given, at the place where it was purchased, that such tickets were " sold from June 1st to October 1st, good to return until November 1st," of that year, and that similar notice was given by circulars there and elsewhere, was clearly incompetent and rightly rejected. If the proposition had been coupled with an offer to show that the plaintiff below had actual notice of the fact, it would have been competent, but this was not done, nor was there any testimony in the case tending to

prove that he knew the ticket was limited. The learned judge was therefore right in charging the jury that there is nothing whatever on the ticket limiting the time within which it might be used ; nor is there anything to show the purchaser " that it was not at his discretion to use it when he was disposed to do so, and the company cannot limit their responsibility, after making a contract of that sort, by any directions or instructions to their agents." He was also right in refusing to charge as requested in defendant's second point, viz.: " If the jury believe that the plaintiff, by the exercise of ordinary diligence and care in making inquiries, could have ascertained at or before the time he got the ticket, that under the rules and regulations of the company it was not good after November 1st, 1879, and did not exercise such care and diligence, then the plaintiff is not entitled to recover, and the verdict should be for defendant." There was no evidence to justify the submission of this proposition. On the contrary the uncontradicted testimony negatived the idea of any want of care and diligence on the part of plaintiff below. He testified in substance that when he was about purchasing a single ticket to Philadelphia, the ticket agent informed him he could buy a round trip ticket that would be good until used, and upon that assurance he bought and paid for the ticket in question.

There is nothing, either in the testimony admitted or in the offers of evidence, that tended in the slightest degree to invalidate the ticket in the hands of plaintiff below, and hence he was entitled to use it at the time it was tendered to the conductor, and the latter had no right to eject him from the car for non-payment of fare.

The next question is, whether the learned judge erred in refusing defendant's first point and in submitting to the jury the question whether the conductor in charge of the train was an employee of the defendant below, then acting within the general scope of his authority as such conductor. The provision, contained in the ticket, that in selling it " for passage over other roads, this company acts only as an agent and assumes no responsibility beyond its own line," of course relieves it from liability for any wrong done on the line of the Northern Central Railroad, unless the act complained of was committed by one of the company defendant's own officers or employees acting within the general scope of his authority at the time. As to this, the testimony was conflicting, but it was clearly proper for the consideration of the jury, and was fairly submitted to them. They must have found the fact as claimed by the plaintiff below, otherwise their verdict, under the instructions of the court, would have been in favor of the company.

There was no error in declining to affirm defendant's third point; nor in rejecting the offer referred to in the sixth specification. Neither of the assignments of error is sustained.

Judgment affirmed.

Justices PAXSON and GREEN dissent, upon the ground that there was no evidence that the conductor was in the employ of the defendant company.

[A motion for a re-argument of the above case was refused.]