# Duggan, Appellant, *v.* Baltimore & Ohio Railroad.

*Railroads—Wrongful arrest—Measure of damages.*

Nominal damages are those recoverable where a legal right is to be vindicated from an invasion that has produced no actual present loss of any kind; if there has been any actual loss, then the damages must be compensatory; and for false imprisonment, as for trespass in improperly ejecting a passenger by the employees of a railroad company, the damages include, in addition to actual expenses incurred, compensation for loss of time, interruption of business, bodily or mental suffering, humiliation, and injury to feelings.

*Master and servant—In line of business—Respondeat superior—Wrongful arrest by railroad detective.*

If an employee of a railroad company has the general authority, actual or apparent, to act for the company in the capacity of detective officer, and such authority includes, expressly by general usage and consent, the power to make an arrest in the company's behalf, the mode of execution of such power, with a warrant or without, is immaterial, and if the officer makes a wrongful arrest the company is liable. This is the general ground of the operation of the maxim of respondeat superior.

*Conductors—Protection of passengers—Liability of railroad.*

The conductor of a railroad train has general power and control over the train and all persons on it, with authority to compel observance of the regulations of the company, to preserve order and to employ the whole force of the trainmen, and of passengers willing to assist, for these purposes. These extensive powers involve the correlative duty to protect passengers, not only from injury by negligence or accident, but also from violence and illegal annoyance or interference by other parties.

He is not, however, required to enter into a contest with or put himself in opposition to officers of the law, and if he stands by without taking part in an arrest of a passenger by known policemen, he is not necessarily bound to inquire into their authority, or assert his own against it.

A railroad detective telegraphed to a conductor on a train to have two passengers, who were described in the telegram, arrested at a designated station. The telegram arrived at the station ahead of the train, and the baggage master received it, and summoned policemen to await the arrival of the train. When the train reached the station the policemen entered a car, and, according to the testimony of some of the witnesses, the conductor pointed plaintiff out as one of the men to be arrested. The policemen then removed him from the train. Plaintiff was not the person intended by the telegram. *Held,* in an action against a railroad company, that the case was for the jury.

Although the telegram was addressed to the conductor of that train, he does not seem to have assumed the direction of the affair, but rather to have acquiesced in what the police, whom he found there on his arrival,

should do, with the suggestion that they should not detain his train. The case must therefore go to the jury to determine what he did, and whether, in accordance with the principles of law, it was a proper performance of his duty. Per MITCHELL, J.

*Corporations—Ultra vires—False arrest.*

Not considered whether the act of a conductor in aiding in the false arrest of a passenger is ultra vires so far as the railroad company is concerned.

*Paper books—Argument—Citation o* ⁰ *Pennsylvania cases—Practice.*

On appeals to the Supreme Court it is the duty of counsel to refer in their paper books to the Pennsylvania decisions relevant and material to the question under examination.

Argued Nov. 3, 1893.   Appeal, No. 245, Oct. T., 1893, by plaintiff, John Duggan, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1892, No. 517, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for arrest and removal from railroad train.

The facts appear by the following charge, by WHITE, J.:

"The plaintiff lives in New Haven, opposite Connellsville, in Fayette county, and, on December 16th, 1891, came over to Connellsville, shortly after four o'clock in the morning, intending to come to Pittsburgh on the express train, and purchased a round-trip ticket, for which he paid $2.75.   When the train got to McKeesport, some police officer came aboard the train, and, in pursuance of a telegram which had been sent from Connellsville, and signed by R. F. Shephard, the officer took the plaintiff off the train, and from that to the police station in McKeesport, and from there to the lock-up.   The train arrived at McKeesport about six o'clock in the morning, and shortly after that the plaintiff was taken to the lock-up, where he remained until something after nine o'clock, when he was released. Mr. Shephard, who had sent the telegram, on coming to McKeesport and going to the lock-up discovered that he was not the party that was wanted, and consequently he was immediately released.

"The telegram was as follows: 'To conductor No. 9, McKeesport, Pa.   If two men got on at Connellsville, one day operator here, small in size, small hump on back, black mous

tache; other, slender built, very dark complexion, dark moustache, have both arrested and advise me Connellsville. (Signed) Robert F. Shephard.'

" It seems from the evidence that this telegram, although directed to the conductor of the train, was received at McKeesport by the baggage agent, or the man who handles the baggage about the platform, who spoke to one of the police officers who were at the station when the train stopped. The baggage master gave this telegram to the conductor, and the officers went on to the train and were talking to the conductor; there is a little difference of statement as to what occurred after the officers went in; the plaintiff stated that when they came in the conductor said: ' This is the man—take him off.' Plaintiff admitted, however, that something was said about these men getting on the train at Connellsville. Another witness says that the conductor said ' These are the two men that got on at Connellsville,' and pointed out the two men. It seems that there was some little delay at McKeesport, and the conductor started his train, and said, as some of the witnesses state, ' If you want to take this man off, take him off; I will not stay here all day.' After the train started it was stopped and the officer took the plaintiff off. Some others spoke about the conductor having said: 'Take him off; there are the men; if you want them, take them off,' or some expression of that kind.

" [The question arises here as to whether the defendant company were liable at all in this action. Defendant's counsel has asked me to say that there is no such liability on their part. The action is brought for false, arrest and false imprisonment. It seems from the testimony that Mr. Shephard was the detective agent of the Baltimore & Ohio Railroad Company, but there is no evidence that the company ever authorized him to arrest any person, or to direct the arrest of any person, without a proper warrant being issued. Ordinarily no man or officer has a right to arrest another on some charge of a crime committed, unless there is an information upon oath charging the party with the crime, and a warrant issued for his arrest. Sometimes when a party is seen committing a crime an officer may arrest him ' on view,' but ordinarily no person or officer has such right without an information made, and warrant issued for his arrest; I say there is no evidence in this case that Shephard was thus au-

thorized by defendant company, and it is not to be presumed that he had that power.  If Shephard himself had come to Mc-Keesport and had gone aboard the train and taken this man off, without an information and warrant, he would have been guilty of an unlawful arrest, and would be personally responsible for such conduct; the company would not be responsible any more than it would if the conductor had committed an assault and battery upon a passenger, or had committed any other crime upon a passenger; therefore this telegram was no authority for these officers to arrest the plaintiff and take him off the train, and in no event would the railroad company be liable for what these officers did after plaintiff was taken off the cars.] [1] He was taken to the police station; it was early in the morning, and according to the evidence he told them who he was, and where he lived, and showed them his bank book and other papers to show that there certainly was some mistake in his arrest, and he said to the officers on the car that he was not the man they were after.  When such information was given to the officers they ought to have been careful as to what they did.  It was enough to put them on their guard, and as they were proceeding illegally, proceeding at their peril in arresting him, they ought to have been more careful.  [The telegram did not authorize them to lock him up in the prison of McKeesport.  It simply authorized—if they did anything—that they should arrest and hold him until they would identify him.    They might have detained him—perhaps detained him without any trouble at all, because he made no resistance—might have perhaps kept him at the station house, or any place else, but taking him to the lock-up and locking him in the prison, without any warrant, or anything of the kind, was a gross outrage, but the railroad company would not be responsible in any event for that.] [2]

" [The question is, did the conductor do anything wrong, and that is the only question in this case.  I say to you that if the conductor simply pointed out the plaintiff as one of the men that got on at Connellsville—if that is all he did, there can be no recovery here at all against the defendant company.] [3]  I submit to you the question on another aspect of the case, because of the testimony of some of the witnesses.  If the conductor pointed out these two men as the men that were wanted under this telegram, and if he pointed out the plaintiff as one

of the men referred to in the telegram, and aided the officers
to take him off the train, then I say to you that the plaintiff
can recover, but to recover only such damages as resulted from
his being unable to complete his trip that day.] [4]  In that
event he could recover only what pecuniary loss he sustained
by not being enabled to go to Pittsburgh on that train, and then
the question is has he proven any loss ?  He got his breakfast
in McKeesport, paid for by Mr. Shephard, because as soon as it
was found that there was a mistake· in the case Mr. Shephard
took him out, got him his breakfast, and got his transportation
down to Pittsburgh without any expense—I presume he gave
up his ticket from Connellsville to Pittsburgh, when the con-
ductor first came around, but he paid nothing for his trip from
McKeesport down, and according to his testimony he found out
from the party he saw in McKeesport that there was really no
necessity for his going to Pittsburgh that day, for the party he
wished to see was not there.  ·He returned to Connellsville, his
home, that evening, and the next day came back to Pittsburgh.

"  [Now if the plaintiff was wrongfully put off by the con-
ductor, and he suffered any loss, he would be entitled to recov-
er damages covering any loss he might sustain, but as this was
a plain palpable mistake, the recovery against the company could
only be.by way of compensation, and if he sustained no loss in
consequence of it, the damages would simply be nominal.  By
nominal damages we mean a very small sum, a few cents.  It
is different from what is called substantial damages, where there
has been a substantial injury, but where there has been simply
a technical wrong the damages are simply nominal."] [5]

Verdict and judgment for plaintiff for $25.00.  Plaintiff ap-
pealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Frank P. Iams, Cyrus C. Brock* with him, for appellant,
cited : Adams Express Co. v. Schlessinger, 75 Pa. 257 ; ·Brooke
v. R. R., 108 Pa. 545 ; Palmeri v. Ry., 133 N. Y. 261 ; Weed
v. P. R. R., 17 N. Y. 362 ; Hamilton v. R. R., 53 N. Y. 25 ;
Stewart v. R. R., 90 N. Y. 588 ; Dwinelle v. R. R., 120 N. Y.
117 ; 44 A. & E. R. R. Cas. 384 ; Cooley on Torts, 2d ed. 666 ;
Harris v. R. R., 35 Fed. R. 116 ; Corbett v. Ry., 42 Hun, 587 ;

Cracker v. R. R., 36 Wis. 657; R. R. v. Finney, 10 Wis. 330; Ramsden v. Ry., 104 Mass. 117; Higgins v. Watervliet Turnpike Co., 46 N. Y. 23; Hoffman v. R. R., 87 N. Y. 25; Flynn v. R. R., 49 N. Y. Sup. Ct. (17 J. & S.) 81; Stewart v. R. R., 90 N. Y. 588; Gillingham v. R. R., 35 W. Va. 588; Bowen v. R. R., 34 Hun, 471; Sedgwick on Damages, 8th ed., ch. 2.

*Johns McCleave*, for appellee, cited: Roe v. R. R., 7 Ex. 36; Poulton v. Ry., L. R. 2 Q. B. Cas. 534; Goff v. R. R., 3 E. & E. 672; Seymour v. Greenwood, 7 H. & N. 355; Edwards v. Ry., L. R. 5 C. P. 445; Allen v. Ry., L. R. 6 Q. B. 65; Towanda Coal Co. v. Heeman, 86 Pa. 418.

OPINION BY MR. JUSTICE MITCHELL, December 30, 1893:

The instructions to the jury on the measure of damages cannot be sustained. The charge that plaintiff could recover "only such damages as resulted from his being unable to complete his trip that day," is substantially the same as the point presented in Penn. R. R. Co. v. Spicker, 105 Pa. 142, that "damages must be limited to compensation for loss of time, expenses incurred then and there, and the cost of another ticket" which this court held was properly refused.

The further charge that plaintiff's recovery "could only be by way of compensation, and if he sustained no loss in consequence of it, the damages would simply be nominal," was likely to confuse the jury as to nominal and compensatory damages, and to mislead them to suppose the latter should only include definite pecuniary loss. Such is not the rule. Nominal damages are those recoverable where a legal right is to be vindicated from an invasion that has produced no actual present loss of any kind. If there has been any actual loss, then the damages must be compensatory, and for false imprisonment, as for trespass in improperly ejecting plaintiff from the cars, such damages include, in addition to actual expenses incurred, compensation for loss of time, interruption of business, bodily or mental suffering, humiliation and injury to feelings. If the plaintiff was entitled to have his case go to the jury at all, these matters were proper subjects for consideration in estimating his compensation; Perry v. Pittsburgh, etc. R. W. Co., 153 Pa. 236; 7 Am. & Eng. Encyc. of Law, 690.

The main question in the case, was the defendant responsible for the violation of plaintiff's rights, may turn on either of two grounds. First, was Shephard the agent of defendant in ordering the arrest, and had he such authority, actual or apparent, as justified the conductor in obeying his telegraphed order? It is not necessary, as the learned judge seems to have told the jury, that the defendant should have authorized Shephard to make an arrest without a warrant. If he had the general authority, actual or apparent, to act for the defendant in the capacity of detective officer, and such authority included, expressly or by general usage and consent, the power to make an arrest in their behalf, then the mode of execution of such power, with warrant or without, was immaterial, and the defendant was liable in either event. That is the general ground of the operation of the maxim respondeat superior. If the master orders the thing done, he is responsible for the manner in which the servant does it. There was some evidence of Shephard's employment as detective for the defendant, and that question must go the jury.

Secondly, was the defendant made liable by the action of the conductor? This also was a question for the jury. The conductor has general power and control over the train and all persons on it, with authority to compel observance of the regulations of the company, to preserve order, and to employ the whole force of the train men, and of passengers willing to assist, for these purposes. These extensive powers involve the correlative duty to protect passengers, not only from injury by negligence or accident, but also from violence and illegal annoyance or interference by other parties. In Pittsburgh etc. R. R. Co. v. Hinds, 53 Pa. 512, a woman passenger was injured during a fight among a mob of disorderly men that had got on the train at a way station. This court held that the railroad company escaped liability for allowing them to get on only because the evidence showed clearly that the conductor had no opportunity or force adequate to prevent them, and the railroad company was not bound to anticipate such an occurrence, but that it was liable if the conductor did not do all he could to stop the fighting. The law on this point as to the duty to protect passengers from violence and disorder, is laid down by Chief Justice WOODWARD with great stringency. The conductor,

he says, " has large powers at his disposal, and if properly used, they are generally sufficient to preserve order. . . . His official character and position are a power.   Then he may stop the train and call to his assistance the engineer, the fireman, all the brakesmen and such passengers as are willing to lend a helping hand. . . . Until at least he has put forth the forces at his disposal, no conductor has a right to abandon the scene of conflict."    Again in Pittsburgh etc. R. R. Co. v. Pillow, 76 Pa. 510, it is said that there is no sound distinction between injuries from negligence in the equipment or management of the train, and those arising from the misconduct of passengers upon it.   " If the employees of the road had no control or power over passengers, this argument would be sound.   But they have such power, and they are just as responsible for its proper exercise, as they are for the proper running of the train."   This case was quoted approvingly in Rommel v. Schambacher, 120 Pa. 579, where upon the same principle an innkeeper was held liable for not protecting a guest from the drunken freak of another.   And what is said in Lang v. Penn. R. R. Co., 154 Pa. 342, as to the protection of goods, applies a fortiori to the protection of the persons of passengers.   " The railroad company was represented in the carriage and safe-keeping of the freight on the train by the men to whom the train had been committed.   If they deserted their posts and left the goods uncared for, and they were stolen or destroyed, their employer must suffer for their inefficiency."

In the present case the telegraphed order of Shephard was addressed to the conductor, he appears to have accepted it as valid, and the subject was within the general line of his duty. If therefore he took part in the illegal arrest the defendant was liable for the consequences of his act.   But even beyond this, it was his duty under ordinary circumstances, as already said, to protect his passengers from trespass while under his care, and if he stood by and saw them illegally molested in any way without an effort to protect them, it would be negligence for which the defendant would be liable.   He was not however required to enter into a contest with or put himself in opposition to the officers of the law, and if he merely stood by without taking part in the arrest by known policemen, he was not necessarily bound to inquire into their authority, or assert his own

against it.   How far the conductor in the present case assisted
in the arrest is the subject of some conflict in the testimony,
and what knowledge he had of the illegality of it, is not clear.
Although the telegram was addressed to him, as the conductor
of that train, he does not seem to have assumed the direction
of the affair, but rather to have acquiesced in what the police
whom he found there on his arrival should do, with the sugges-
tion that they should not detain his train.   The case must
therefore go to the jury to determine what he did, and whether,
in accordance with the principles of law, it was a proper per-
formance of his duty.

The distinction made in the English cases cited by appellee,
with reference to acts ultra vires as to the corporation, does not
seem to have commanded general assent in this country, (see
7 Eng. & Am. Encycl. of Law, 684,) but we are not required
to consider it at present, as our own cases show that the alleged
acts of the conductor as well as of Shephard were such as might
be viewed by the jury as within the apparent authority dele-
gated by the defendant.

The paper book of appellant is open to just complaint.   In a
rather full brief of cases from other states not a single Pennsyl-
vania decision is referred to, although, as this opinion shows,
there are several which are much closer in point than any of
those cited, and they are of course much more authoritative
with us than those of other states, however well reasoned.   In
the pressure of business on this court we ought not to be called
on to do counsel's work.   It is not always possible to recall at
once even cases with which we are familiar, and we should be
able to rely on counsel for reference at least to everything rel-
evant and material in our own reports.   Counsel who neglect
this duty take a risk not fair either to the court or their client.

Judgment reversed and venire de novo awarded.

DUGGAN v. B. & O. RAILROAD, APPELLANT.

Appeal, No. 302, Oct. T. 1893, by defendant, from same
judgment as in preceding case, and argued with it.

OPINION BY Mr. JUSTICE MITCHELL, December 30, 1893:

For the reasons set forth in the opinion in Duggan v. Balt.
etc. R. R. Co. filed herewith this appeal is dismissed.