## Butler *v.* Stockdale, Appellant.

*Evidence—False imprisonment—Newspaper articles—Record.*

In an action of trespass for false imprisonment, newspaper articles describing an alleged larceny by the plaintiff of the goods of the defendant and comments relating thereto are incompetent and irrelevant.

It is proper in an action of trespass for false imprisonment to show that the defendant had no reasonable ground for making the arrest, and of this the verdict of acquittal by a jury is evidence. In the trial of such an action it is therefore proper to admit in evidence the record of the court of quarter sessions showing the acquittal. At such a trial the witnesses who were examined in the quarter sessions may be cross-examined as to particular facts testified to by them in the criminal court.

*Assault and battery—Definition.*

Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.

There may be an assault and battery without any distinct physical injury resulting.

*False imprisonment—Evidence—Question for jury.*

In an action for false imprisonment the court commits no error in refusing binding instructions for defendant where it appears that the defendant, suspecting that the plaintiff, a customer in his store, had appropriated some articles of merchandise, confined her in an upper room of the store for several hours, although the office of a justice of the peace was within a convenient distance of the store.

*False imprisonment—Damages—Mental suffering.*

In an action for false imprisonment, mental suffering, humiliation and injury to feeling are legitimate subjects of claim.

Argued Oct. 20, 1901.   Appeal, No. 212, Oct. T., 1901, by defendant, from judgment of C. P. Clearfield Co., Sept. T., 1901, No. 161, on verdict for plaintiff in case of Pattie E. Butler v. T. J. Stockdale.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Trespass for assault and battery and false imprisonment. Before GORDON, P. J.

At the trial it appeared that on November 7, 1899, plaintiff visited defendant's store as a customer.   Defendant, suspecting that she had stolen some soap, confined her in an upper room of the store for several hours.   Subsequently she was arrested under a warrant, and tried in the court of quarter sessions for larceny.   The trial resulted in her acquittal.

When the plaintiff was on the stand she was asked this question:

"Q. You may state Mrs. Butler after you got away from DuBois whether you noticed a publication in the paper, in which you were exposed?"

Mr. Cole: We object to that as incompetent, irrelevant and immaterial, and not covered by the pleadings.

Mr. Fairman: I offer that for this purpose.   We say to the court that this defendant, after his illegal act, as we view it, after putting this woman there in confinement for a period of five hours, went to the DuBois Courier and he had a statement there published.

Are you going to follow this by proof that he did it?

Mr. Fairman: I am going to try to.   I have the publication here and I propose to show that he went and put in the paper,

or at his instance, a publication and sent it broadcast all over the county and over the commonwealth, not only in the Du-Bois Courier but in this blackguard sheet down the river here, "The Grit," and wherever a paper was villainous enough to publish a statement of that kind before a trial was had and the truth known, and sent it broadcast all over this commonwealth to injure this poor woman as we allege. The article itself upon examination will show your honor that no outside person could have published such an article. And the same in the Evening Express.

Mr. Cole: We will add further to our objection. This purports to be the declaration and act of some third party, not the act of the defendant. And the further objection that there is no claim in the plaintiff's declaration for pain and suffering of any kind by reason of the publication of any article or anything else.

The Court: We will admit this testimony, not for the purpose of showing any false imprisonment, but for the purpose of showing the pain and suffering which the plaintiff was compelled to endure in consequence of the alleged false imprisonment. Objections are therefore overruled, evidence admitted for that purpose and exception noted for defendant. It is not of course for the purpose of enabling the plaintiff to recover damages for any libel, but simply as stated as bearing upon the question of her pain and suffering. [1]

Mr. Fairman: Now we will offer the article in the DuBois Courier of Wednesday November 8, 1899, headed "a female shoplifter," on first page. And we offer this article in the Evening Express of Thursday, November 9, 1899, headed "Further Testimony."

(Reading from DuBois Courier.) "A female shoplifter apprehended at the Union Bargain Store yesterday afternoon. A varied assortment of goods was returned when the woman was confronted with her guilt. Held for court. Yesterday afternoon the managers of the Union Bargain Store gave another black eye, figuratively speaking, to the shoplifting industry. The culprit in this instance was not a depraved specimen of human life but a woman from the country, Mrs. John Butler, of near Troutville. She had been a visitor to the store on many occasions, but this was the first time the suspicions of

any of the attendants of the store were aroused.  She was detected stowing away some things which she had not purchased.  Then she was unknown to her placed between two of the store people and in a few minutes was detected helping herself to some soap.  Mr. Stockdale seen her, asked her to accompany him to the floor above where not so many people were looking at goods and he then told her she would have to give up those things which she had taken.  She had some articles with her and more in a small bag down stairs.  Two pairs of gloves, stockings, soaps, handkerchiefs, etc., constituted the collection.  The woman was taken to Justice Hay's office and placed under bail in the sum of $100 for appearance at court.  There is a fine organization of the force at the Union Bargain Store and those who enter with intent to steal are constantly under surveillance, for it is a part of the business there to see that nobody carries away goods which are not paid for."

Now from the Express we have this: " T. J. Stockdale, manager of the Union Bargain Store, discovered a bunch of notions behind a roll of oilcloth in one of the upstairs rooms of the store yesterday.  It consisted of six yards of ribbon, a pair of gloves, a pair of mittens, several bars of fine soap, yarn, etc.  They were thrown there by the Troutville woman who was arrested Tuesday for shoplifting.  The truth being substantiated by the fact that the gloves were recognized by George Stockdale as the pair he had noticed the woman hiding under a sweater when he approached her.  He restored them to their proper place but the woman persisted in her attempt to secure them until she had succeeded."

" Q. Now you may state with reference to this paper that was offered in evidence here, where did you get that Dubois Courier, if you had it?  A. The one I have here I got from Mr. Adam Haag in DuBois.  Q. You may state whether you were taking that paper at the time or not?  A. No, not that DuBois paper; we took the other DuBois paper.  Q. The Express?  A. Yes, sir.  Q. How soon after the transaction did you get this DuBois Courier?  A. The next day I got it.  I didn't arrive home though till a few days afterwards.  Q. You may state what you done with it as to letting your wife know the contents, if anything.

Mr. Cole : We object to this as incompetent, irrelevant and immaterial.

The Court: He can testify if his wife saw it and read it or it was read to her.

" A. I read it to her."

Mr. Cole: Give us a ruling.

The Court: Objections are overruled, evidence admitted and exceptions noted for defendant. [2]

Mr. Cole: We might ask at this time what the purpose of this evidence is?

Mr. Fairman: The purpose is to show that these publications came to her knowledge and aggravated and increased her mental suffering, effected by her mentally and physically to know those things were broadcast in the country.

Mr. Cole: Harry Boulton, called on part of plaintiff, being duly sworn and examined, testified as follows:

Mr. Fairman: " Q. You are an attorney of this county? A. Yes, sir.   Q. I want you to state in what capacity you acted, if any, at the time of the trial here against Mrs. Butler, this lady sitting here? A. I acted as court reporter.   Q. I want you to state if you have the testimony as given by T. J. Stockdale, George Stockdale and Melva Solida on that trial?   A. I have.   Q. Now will you turn to the testimony of T. J. Stockdale and read that portion of it where he testifies with relation to the chair that he set in the room and how he set it and the condition of that door? "

Mr. Cole: We object to this as the testimony was not shown to the witness and he was not asked as to whether he testified to the facts as they are recorded in the testimony.

The Court: He was a party.   Doesn't that get away with this rule?

Mr. Cole: No, it doesn't get away with that rule.

The Court: The witness, T. J. Stockdale, being the defendant in the case, we think the evidence is competent.   Objections are therefore overruled, evidence admitted and exception noted for defendant.

Mr. Fairman: " Q. Read that part of the testimony on page 124.  'A. 124 and 125.  When you went up the second time (this is on cross-examination) when you went up the second time you asked her the same question about Butler.   Yes, sir, merely as an excuse.   Then you asked her the second time where Mr. Butler was when she first told you he was not in

town? Yes, sir. Now, sir, you say you did that for a mere excuse to get in there? I wanted to know if she was in there yet. You could have seen her in there without going into the room? No, sir. You did go into the room to see whether she was in or not? Yes, sir. How big is the room? Ten by twelve. What kind of furniture is in it? There is no furniture. Then you think it was necessary to go inside the room, clear inside before you could see this defendant? Yes, sir, I could not see her without doing it. Could not open the door and look in a ten by twelve room? No, sir.' Q. Now will you please go to the testimony—"

Mr. Cole: Now you ask that to be stricken out. It is not in accordance with the offer; it is unfair and doesn't prove what the counsel alleges it proves and we don't think it is good faith.

The Court: The first part of the testimony is not in accordance with the offer and as to that the motion of defendant's counsel to strike out is granted and the same stricken out and the jury directed to disregard it. But that portion of it which refers to the position in which the plaintiff was in the room and what the defendant did in going into it, we think is competent. As to that objection overruled, motion refused and exception noted for the defendant. [3]

Mr. Fairman: " Q. Now will you please turn to the testimony of George Stockdale where he described where that sack was found?"

Mr. Cole: We object to this for the reason that the testimony was not shown to the witness they propose to contradict, was not read to him, his attention was not called to the manner in which he testified before any more than in a general way. This testimony was not shown to him at all.

The Court: Objections overruled, evidence admitted and exception noted for defendant. [4]

Defendant presented these points:

1. In order to recover in this case plaintiff must allege and prove both malice and want of probable cause. As she neither alleges nor proves malice in this case, there can be no recovery. *Answer:* We refuse that point. [7]

4. There can be no recovery in this case for mental suffering or anguish of mind, or loss of health or earning power, as they are not claimed for in the pleadings. *Answer:* That point is refused. [8]

3. That under the law, the pleading and the evidence the verdict must be for the defendant. *Answer :* We also refuse that point. [10]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions. (7, 8, 10) Above instructions, quoting them.

*S. V. Wilson,* with him *Cole & Moore,* for appellant.—The admission of the newspaper article was error: Thomas v. Miller, 151 Pa. 482 ; Zebley v. Storey, 117 Pa. 486.

Where it is intended to impeach the credit of a witness by proof of a statement made on a former trial between the same parties, the attention of the witness must be called to the statements made, and he be asked, if he testifies to the facts set forth in the record, before the testimony can be read to contradict him: Cole v. High, 173 Pa. 590 ; Walden v. Finch, 70 Pa. 464 ; Com. v. Cowan, 4 Pa. Superior Ct. 584.

The admission of the record of the acquittal of the plaintiff under the pleadings in this case, and under the theory by which it was tried, was manifest error: McElhattan v. Kane, 7 Pa. C. C. Rep. 313 ; Mitchell v. Logan, 172 Pa. 352.

Under the law, pleadings and the evidence, we were entitled to a verdict: Mahaffey v. Byers, 151 Pa. 97.

*William Fairman,* with him *Oscar Mitchell,* for appellee.—The gist of false imprisonment is unlawful detention: McCarthy v. De Armit, 99 Pa. 74; Duggan v. B. & O. R. R. Co., 159 Pa. 253.

The newspaper publications were admitted by the court as evidence of mental anguish only.

The admission of evidence to discredit a witness by proof of contradictory statements, without previous examination of the witness to the same matter, is in the discretion of the court trying the case : Kay v. Fredrigal, 3 Pa. 221–223 ; Rothrock, Exr., v. Gallaher, 91 Pa. 109–113.

An action for false imprisonment will not lie until the criminal proceedings are ended: Garren v. Garren, 1 W. N. C. 9 ; Lowe v. Wartman, 1 Atl. Repr. 489 ; Mentel v. Hippely, 165

Pa. 558; Bernar v. Dunlap, 94 Pa. 329; Ritter v. Ewing, 174 Pa. 344; Grohmann v. Kirschmann, 168 Pa. 189.

A private person may without a warrant at his peril make an arrest, but nothing short of proving the felony will justify the arrest: Wakely v. Hart et al., 6 Binn. 318; Brooks v. Com., 61 Pa. 359; Mahaffey v. Byers, 151 Pa. 95.

Every touching or laying hold of the person of another, or his clothes, in any angry, revengeful, rude or insolent or hostile manner is a battery: 3 Sharswood's Blackstone, 120.  In an action for false imprisonment damages must be compensatory, and such damages include, in addition to actual expenses incurred, compensation for loss of time, interruption of business, bodily or mental suffering, humiliation and injury to feelings: Duggan v. B. & O. R. R. Co., 159 Pa. 248, 253.

Opinion by Beaver, J., January 21, 1902:

The plaintiff brought suit in trespass against the defendant, for assault and battery and false imprisonment.  There was nothing in the statement and nothing whatever in the claim of the plaintiff during the trial which indicated an intention to claim damages for malicious prosecution.  This was especially eliminated by the distinct admission of the plaintiff's attorney that no such claim was made, to which the trial judge assented.  It was, therefore, not incumbent upon the judge to set out in his charge the distinction between false imprisonment and malicious prosecution, nor was it necessary for him to define malicious prosecution and set forth the elements which must enter into it, in order to maintain the action and entitle to a recovery, notwithstanding the irrelevant point for charge submitted by defendant in which he incorporates the elements essential to a recovery in an action for malicious prosecution. On the other hand, testimony which might have been competent and relevant in an action for malicious prosecution, as tending to show malice, was not so in an action for false imprisonment, and this leads to the principal question in the case.

1. The appellant's first specification of error relates to the admission of newspaper articles describing the alleged larceny by the plaintiff of the goods of the defendant and comments relating thereto.  The offer was objectionable in itself and the testimony therein contained both incompetent and irrelevant.

After the offer had been made, inquiry was made of the plaintiff's attorney as to whether or not he proposed to follow the offer by proof that the defendant had the newspaper articles referred to inserted in the newspaper and the reply was, "I am going to try to." This was not a sufficient offer. Even if the testimony had been proper, it should not have been admitted, unless accompanied by a distinct offer to follow it with proof that the defendant had inserted the newspaper articles referred to. There was no evidence connecting the plaintiff with the publication of the articles beyond the mere fact of the arrest and imprisonment of the plaintiff. The testimony should have been stricken out, therefore, after it was received, because the plaintiff was not connected in any way whatever with the publication, but, waiving the technicality, the evidence was not competent for the purpose for which it was admitted. The trial judge, in admitting it, said: "We will admit this testimony, not for the purpose of showing any false imprisonment, but for the purpose of showing the pain and suffering which the plaintiff was compelled to endure in consequence of the alleged false imprisonment." The offer, however, was to show, and the result must have been, mental pain and suffering not from the imprisonment but from the reading of the newspaper articles concerning the same, the publication of which was a distinct offense. They were in no sense a result of the false imprisonment. Under no view, therefore, which we can take of it, was the testimony admissible. The offer should have been excluded and the first and second specifications of error are, therefore, sustained.

2. The third, fourth and fifth assignments of error involve the admissibility of the record of the testimony of the defendant and some of his witnesses in the trial of the plaintiff in the court of quarter sessions for larceny, with which she was charged by the defendant. All of these witnesses were examined upon cross-examination in a general way as to their testimony in that trial and their attention called to particular parts of their testimony relating to specific facts. They were not shown the stenographer's notes and were not particularly interrogated as to the answers to specific questions, nor did the defendant make any request that this should be done. In order to contradict their testimony as to particular facts, the record

of the stenographer's notes was read, the court properly con. fining the same to such portions as contradicted the testimony in chief of the witnesses.    The appellant puts it more strongly than this in his argument, but a careful examination of the testimony shows that this was the fact and in this there was no error.

As we view the case, in the light of what has been said in regard to the charge of malicious prosecution, the admission of the record of the trial of the plaintiff in the court of quarter sessions upon the charge of larceny preferred by the defendant, which showed her acquittal, was not erroneous.    It is proper, in an action of trespass for false imprisonment, to show that the defendant had no reasonable ground for making the arrest and of this the verdict of acquittal by a jury is evidence. There was evidence of some force used by the defendant in compelling the plaintiff to ascend the stairway and enter the room in which she alleged she was confined.    It is true that the trial judge in his charge to the jury says that no physical injury was inflicted upon the plaintiff.    There may, however, be an assault and battery, without any distinct physical injury resulting ; that is, such an injury as will be manifest by pain or marks upon the person, and this is not at variance in any respect with the definition quoted by the appellant from Greenleaf, namely, " Assault is an intentional attempt by force to do an injury to the person of another and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."

3. Admitting that the defendant had reasonable cause for suspecting the plaintiff of an intention to appropriate the soap which he found in her hands and was, therefore, justified in making an arrest, there can be no justification for the mode of confinement which he practiced, whether it be two or three hours according to his account, or over five hours according to hers.    The plaintiff was placed in an upper room of the store, where she could communicate with no one, and was kept there against her will for several hours.    The office of a justice of the peace was within a convenient distance of the store and, whether the justice were in his office or not, it would have been easy for the defendant to accompany the plaintiff to the office of the justice and there apply for a warrant and secure a legal

arrest thereupon. There was, therefore, no error in the refusal of the court of the defendant's second and third points for charge.

4. The plaintiff in her statement does not claim damages in terms for mental suffering, humiliation and injury to feeling, but these are clearly included in the general claim for damages "and other wrongs" committed by the defendant against the plaintiff. Such damages are regarded as being the legitimate subject of claim in an action for false imprisonment. As was said in Duggan v. B. & O. R. R. Co., 159 Pa. 248: "If there has been any actual loss, then the damages must be compensatory and for false imprisonment or for trespass in improperly ejecting plaintiff from the cars, such damages include, in addition to actual expenses incurred, compensation for loss of time, interruption of business, bodily or mental suffering, humiliation and injury to feelings."

There are numerous specifications of error but those which appear to be worthy of special note are disposed of in what we have said and, except as to the admission of the newspaper articles referred to in the first and second specifications of error, no error of which the defendant can rightfully complain was committed in the course of the trial but, for the reasons stated in disposing of those specifications, the case must be retried. Judgment reversed and a new venire awarded.